**UNITED STATES of America**

v.

**Sonia HUED, Defendant.**

**No. 03 CR. 1432(VM).**

United States District Court, S.D. New York.

Sept. 10, 2004.

---

CORRECTED DECISION AND ORDER

MARRERO, District Judge.

Defendant Sonia Hued ("Hued") pled guilty to a charge of making her apartment available for the purpose of storing and packaging heroin, in violation of 21 U.S.C. § 856. The Probation Office has recommended that Hued receive a sentence under the United States Sentencing Guidelines that reflects a total offense level of 22. Since Hued has no criminal record, the Guidelines would require her to receive a sentence of between 41 and 51 months imprisonment.

Hued now moves the Court to make certain adjustments to, and departures from, the otherwise applicable sentencing range under the Guidelines.[1] Her motion is granted in part. The Court concludes that Hued was a minimal participant in the heroin trafficking scheme at issue, and is thereby entitled to a four-level reduction (instead of three) in the applicable offense level. The Court also grants Hued's motion to depart on the ground that her conduct amounted to aberrant behavior. Accordingly, for Sentencing Guidelines purposes, the Court sets the offense level at 11 instead of 22.

## I. BACKGROUND [2]

Hued's legal troubles arise from her on-and-off six-year romantic relationship with

1. This Court will continue to apply the Sentencing Guidelines to cases before it pursuant to the decision of the Second Circuit in *United States v. Mincey*, 380 F.3d 102 (2d Cir.2004), which concluded that the Guidelines remain constitutional and directed district courts in this Circuit to continue applying them unless the United States Supreme Court decides otherwise.

2. The factual summary derives from the Presentence Investigation Report ("PSR"), and from the undisputed representations of the parties in their submissions.

her co-defendant, Carlos Saltares ("Saltares"), a drug dealer.[3] In early 2003, Hued agreed to allow Saltares to store some of his belongings in her apartment because he had just been ousted from the apartment of another woman, the mother of Saltares's then-newborn child. Saltares stayed at Hued's apartment about once a week, and he often invited friends to the apartment during the day while Hued was working.

In October 2003, Hued noticed drug paraphernalia such as glassines and rubber bands in the apartment. Hued claims that, until then, she did not know Saltares used or sold drugs, apart from recreational marijuana use. Although she confronted Saltares about this discovery and told him that he was no longer welcome in her apartment, she apparently relented because he continued to visit the apartment after the incident. On November 18, 2003, law enforcement officers arrested Hued and Saltares in the apartment, in which they discovered substantial amounts of heroin, a loaded firearm, and several rounds of ammunition.

In January 2004, the United States Attorney's Office (the "Government") agreed to not prosecute Hued in exchange for her truthful cooperation with the Government. When she later admitted to violating that agreement by omitting certain details of Saltares's crimes and by contacting Saltares, the Government withdrew the agreement. Hued later pled guilty to an information charging her with making her apartment available for heroin trafficking.

The Probation Office calculated Hued's offense level under the Sentencing Guidelines at 22, which included a three-point downward adjustment for her minor role in the offense and a two-point upward adjustment for the presence of a firearm.

Hued now seeks the maximum four-point adjustment for her minimal role (instead of three), and she argues that the two-point firearm enhancement should not apply. She also moves for a downward departure on three grounds: (1) that her conduct amounted to aberrant behavior, (2) that she suffered from a diminished capacity at the time of the offense, and (3) a combination of the first two factors.

## II. DISCUSSION

### A. MINIMAL PARTICIPANT ADJUSTMENT

Under the Sentencing Guidelines, a defendant who is "plainly among the least culpable of those involved in the conduct of a group" is deemed a "minimal participant" and awarded a four-level reduction in the otherwise applicable offense level. *See United States Sentencing Commission Guidelines Manual* § 3B1.2(a) & cmt. n. 4 (2003) ("U.S.S.G."). A defendant who "is less culpable than most other participants, but whose role could not be described as minimal" is a "minor participant" and awarded a two-level reduction. *Id.* § 3B1.2(b) & cmt. n. 5. Defendants whose participation falls between "minor" and "minimal" may be awarded a three-level reduction. *Id.* § 3B1.2.

■ In determining whether a defendant qualifies for one of these adjustments, the Court must evaluate "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir.1990). This is a highly fact-specific inquiry in which the "dispositive consider-

---

**3.** Saltares has pled guilty to conspiring to distribute and possess with intent to distribute heroin, and to possessing a firearm in relation to a drug trafficking offense.

ation" is the defendant's " 'culpability in the context of the facts of the case.' " *United States v. Pena,* 33 F.3d 2, 3 (2d Cir.1994) (quoting *Garcia,* 920 F.2d at 155). The Probation Office recommends that Hued be awarded the three-level reduction, but Hued seeks the full four-level "minimal participant" adjustment.

■ By all accounts, Hued's role in the drug scheme was minimal. She asserts that she was not aware of Saltares's participation in drug trafficking activities until a few weeks before her arrest; she objected to Saltares's conduct; and she did not profit or benefit at all from the conduct that served as the basis for her guilty plea. Her contribution to the drug operation— allowing Saltares to use her apartment— was entirely passive, except for the following incident. On one occasion, Saltares called Hued and told her to bring an envelope downstairs from the apartment to one of Saltares's friends, who was waiting outside. Hued did so, suspecting that the envelope contained drugs.

The Government's objection to the "minimal participant" reduction hinges upon that transaction. Under a separate Guideline provision applicable to 21 U.S.C. § 856, a defendant who "had *no participation* in the underlying controlled substance offense other than allowing use of the premises," *see* U.S.S.G. § 2D1.8(a)(2) (emphasis added), may be awarded a four-level reduction in lieu of any minor or mitigating role adjustments that would otherwise be available under U.S.S.G. § 3B1.2. *See id.* § 2D1.8(b)(1) ("If the offense level is determined under subsection [2D1.8](a)(2), do not apply an adjustment under § 3B1.2 (Mitigating Role).").

The Government argues that the envelope transfer amounted to at least some participation beyond making the apartment available, thus disqualifying Hued from eligibility for the four-level non-participation reduction available under § 2D1.8(a)(2). The Government concludes that the Guidelines could not have intended for a so-called "stash house" defendant who failed to meet the criteria for non-participation under § 2D1.8(a)(2) to nevertheless be eligible for an identical four-level reduction for being a "minimal participant" under § 3B1.2(a). Otherwise, the argument goes, the non-participation reduction would be rendered superfluous by the fact that a lesser showing of "minimal" participation would result in the same reduction as no participation at all.

Even assuming, for the purposes of this argument, that Hued would not qualify for a four-level non-participant reduction under § 2D1.8(a)(2) by reason of her delivery of the envelope, the Court concludes for several reasons that she may still qualify for a four-level reduction under § 3B1.2(a). First, while the Guidelines state that a § 2D1.8(a)(2) non-participant cannot also qualify for an adjustment under § 3B1.2, *see* U.S.S.G. § 2D1.8(b)(1), nowhere do they state, nor would logic compel, the converse: that one who does not qualify as a § 2D1.8(a)(2) non-participant is likewise barred from being considered for the full range of adjustments available under § 3B1.2, including the four-level adjustment available under § 3B1.2(a) to a "minimal participant." The Government acknowledged that Hued might qualify for one of the downward adjustments available under § 3B1.2 when it voiced no objection to the Probation Office's recommendation that Hued receive a three-level downward adjustment under that section.

Second, the Government's reading of the Guidelines would produce unduly harsh results for defendants such as Hued who might qualify for a downward adjustment under either § 3B1.2 or § 2D1.8(a)(2). The Government's reading of these two sections of the Guidelines would effectively

substitute § 2D1.8(a)(2)'s more stringent "non-participant" standard for the "minimal participant" standard in § 3B1.2(a). The result would be that stash-house defendants such as Hued would be at a unique disadvantage, as compared to any other defendants, in obtaining a four-level reduction, even if those defendants were "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, cmt. n. 4. There is no reason to suspect that the Sentencing Commission intended to impose this unique disadvantage upon such defendants, especially when the apparent purpose of § 2D1.8(a)(2) was to add some measure of leniency towards stash-house defendants who do not otherwise engage in drug trafficking.

Third, the Government's argument fails to recognize that the sections serve differing functions under the Sentencing Guidelines. The Sentencing Commission has determined that a "minimal participant" may be punished more severely than a "non-participant": a defendant who qualifies for a "non-participant" adjustment under § 2D1.8(a)(2) may qualify for an offense level "not greater than level 26," U.S.S.G. § 2D1.8(a)(2), while a defendant who qualifies for a "minimal participant" adjustment under § 3B1.2(a) may receive a base offense level as high as 30, see U.S.S.G. § 2D1.1(a)(3).

The Court thus considers its original inquiry—whether Hued has shown she was a "minimal participant" under § 3B1.2(a)—unburdened by the separate non-participation standard contained in § 2D1.8(a)(2). The Court is persuaded that Hued has shown that she was "plainly among the least culpable of those involved" in the heroin trafficking. See U.S.S.G. § 3B1.2, cmt. n. 4. As stated above, there is no evidence that Hued's knowledge of Saltares's drug deals was other than brief,

her contribution to Saltares's underlying offense was not substantial, and her economic or other material gains were nonexistent.

## B. *FIREARM ADJUSTMENT*

At some point after Hued suspected that Saltares was involved in drug activity, she noticed him with a firearm in his waistband. She told Saltares to keep the gun out of her apartment. Saltares agreed, and Hued never saw the gun again. As stated above, law enforcement authorities ultimately recovered a loaded firearm and several rounds of ammunition in Hued's apartment. The Probation Office recommends increasing Hued's offense level by two to account for the firearm, see U.S.S.G. § 2D1.1(b)(1), while Hued argues that the upward adjustment should not apply to her case.

■■■ The firearm adjustment in § 2D1.1(b)(1) applies "so long as the possession of the firearm was reasonably foreseeable" to Hued. *See United States v. Soto,* 959 F.2d 1181, 1186–87 (2d Cir.1992). Hued agrees that the firearm adjustment technically applies to her case, but she nevertheless argues that the Court should not apply the adjustment because of the unique facts here. She emphasizes that she was a passive, unwilling participant who specifically sought to remove the firearm from the premises, and she argues that it would not serve the purpose of the firearm adjustment to apply it to her case. The Court disagrees.

The firearm adjustment "reflects the increased danger of violence when drug traffickers possess weapons," see U.S.S.G. § 2D1.1, cmt. n. 3, and that concern directly applies to the facts of this case. As soon as Hued realized that Saltares possessed a firearm, there became an "increased danger of violence," *id.,* notwithstanding Saltares's (ultimately false) as-

surance that he would keep firearms out of Hued's apartment. The mere presence of the firearm suggested that Saltares's drug operation was potentially more dangerous than it otherwise would have been, and should have given Hued all the more reason to cease making her apartment available to him. The Court therefore finds no reason to make a special exception to the ordinary application of the firearm adjustment.

## C. *ABERRANT BEHAVIOR DEPARTURE*

■ In an "extraordinary case," the Court may depart downward from the otherwise applicable sentencing range on the ground that the defendant's conduct constituted "aberrant behavior." U.S.S.G. § 5K2.20(a); *see also Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (noting that district courts have discretion to depart from Sentencing Guidelines in cases lying outside the "heartland" of cases contemplated by the Guidelines). The Court has discretion to grant such a departure "only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b).[4] In determining whether to depart for aberrant behavior, the Court "may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." *id.,* cmt. n. 3. The Court concludes, based on facts contained within the PSR and materials submitted by counsel, that this is an exceptional case in which departure is warranted.

■ The threshold inquiry of whether Hued's crime was "a single criminal occurrence or single criminal transaction" fits uncomfortably with the facts of this case because Hued's crime was essentially one of omission: once she discovered that Saltares was trafficking in drugs from her home, she failed to stop the illegal conduct for several weeks before she and Saltares were arrested.

The Sentencing Commission, however, made clear when adopting § 5K2.20 that a defendant could qualify for a downward departure under its terms even if the criminal conduct could not easily be considered a "single act." *See United States v. Gonzalez,* 281 F.3d 38, 47 (2d Cir.2002) (noting that the Sentencing Commission desired to "'slightly relax' the 'single act' rule" adopted by some circuits prior to the codification of the "aberrant behavior" departure) (quoting U.S.S.G. supp. to app. C, amend. 603, commentary). Furthermore, the Sentencing Commission has, in other contexts, "intended the word 'single' to

---

**4.** § 5K2.20(c) permits a defendant to obtain a downward departure for aberrant behavior only if: (1) the offense did not involve serious bodily injury or death; (2) the defendant did not discharge a firearm or otherwise use a firearm or dangerous weapon; (3) the offense is not a serious drug trafficking offense; (4) the defendant does not have more than one criminal history point; and (5) the defendant does not have a prior federal or state felony conviction. *See* U.S.S.G. § 5K2.20(c). None of these limitations apply to Hued: the instant offense is not a "serious drug trafficking offense" for purposes of § 5K2.20(c) because she is not subject to a mandatory minimum sentence. *See id.,* cmt. n. 1 (stating that a "serious drug trafficking offense" is one that provides for "a mandatory minimum term of imprisonment of five years or greater"); 21 U.S.C. § 856 (establishing no mandatory minimum for the crime to which Hued pled guilty). None of the other factors listed in § 5K2.20(c) are even arguably present in this case.

refer to refer to the crime committed and not to the various acts involved." *United States v. Barbato,* No. 00 Cr. 1028, 2002 WL 31556376, at *3 (S.D.N.Y. Nov.15, 2002) (quoting *United States v. Grandmaison,* 77 F.3d 555, 562–64 (1st Cir.1996)). Because Hued's ill-considered decision to allow Saltares and his possessions to remain in her home constituted a single course of conduct and single crime, the Court concludes that Hued is guilty only of a "single criminal occurrence."

Turning next to the question of whether Hued's conduct was committed without significant planning, the Court finds that Hued was never actively involved in planning the criminal conduct that led to her arrest. Evidence suggests instead that the drug trafficking activities engaged in by Saltares had been planned and had occurred for some time before Hued ever discovered their existence. Further, Hued sought to remove herself, albeit ineffectually, from the criminal enterprise in which she found herself indirectly involved. Therefore, the Court concludes that Hued's conduct was committed without significant planning.

The Court also finds that Hued's conduct was "of limited duration," as required by the Guidelines. While Hued was aware of Saltares's criminal activities for roughly a three-week period before her arrest, the Second Circuit in *Gonzalez* determined that a criminal conspiracy in which the defendant's involvement was longer and far more significant than Hued's could qualify as one of "limited duration." *See Gonzalez,* 281 F.3d at 39–40, 47–48. The Court emphasizes that whether a crime's duration is "limited" or not depends on the context. Here, Hued had been involved with Saltares for approximately six years before she discovered he was engaging in serious drug trafficking, and at that point he had been regularly staying at her apartment and had his own key. Against that long and involved background, the additional brief period during which she allowed him to use her apartment while aware of his criminal activities is, in the Court's judgment, one of "limited" duration.

Hued's conduct also represented a marked deviation from an otherwise law-abiding life. Hued's submissions demonstrate that she has been a valuable and trusted employee and a giving member of the community throughout her adult life. The submissions also indicate that Hued had a uniquely harmful relationship with Saltares, and that complex psychological factors likely contributed to her criminal conduct. In addition, Hued quickly admitted her own culpability and made efforts to mitigate the effects of her offense. While the Court by no means wishes to condone Hued's admitted use of marijuana, nor her failure to comply fully with the terms of her cooperation agreement with the Government, it concludes that her conduct was sufficiently aberrant under the circumstances to qualify her for a downward departure under § 5K2.20. *See* U.S.S.G. § 5K2.20, cmt. n. 3 (authorizing a court to consider the circumstances under which the defendant's conduct was committed when determining whether the conduct qualifies as "aberrant").

Given Hued's minimal level of culpability in the underlying offense and the aberrance of her behavior, the Court grants Hued's motion for a downward departure. However, the Court declines to grant Hued's request for a sentence that involves no physical confinement. Considering all of the circumstances presented here, such a sentence would fail to "promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2) (2004). Therefore, the Court grants Hued an eleven-level downward de-

parture that places her, after all adjustments are factored in, at a base offense level of 10.

Because Hued qualifies for a downward departure under § 5K2.20 that will lead to the imposition of a "just punishment for the offense," the Court does not reach the question of whether she would also qualify for a downward departure due to diminished capacity or due to a combination of factors.

### III.  *Conclusion*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Sonia Hued for a four-level "minimal participant" downward adjustment under U.S.S.G. § 3B1.2(a) is hereby granted; it is further

**ORDERED** that Hued's motion to avoid imposition of a two-level upward adjustment under U.S.S.G. § 2D1.1 is hereby denied; it is further

**ORDERED** that Hued's motion for an "aberrant behavior" downward departure under U.S.S.G. § 5K2.20 is hereby granted.

**SO ORDERED.**