FILED
United States Court of Appeals
Tenth Circuit

November 26, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARL GENE BRANTLEY,

Defendant - Appellant.

No. 12-7063
(D.C. No. 6:11-CR-00083-RAW-1)
E.D. Oklahoma

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this court has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we

grant the parties' requests and order the case submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I.  INTRODUCTION

Carl Gene Brantley entered a conditional guilty plea[1] to one count of manufacturing 100 or more marijuana plants[2] and one count of criminal drug forfeiture.[3]  Brantley reserved the right to challenge the district court's denial of his motion to suppress the fruits of a warrant-based search of his residence.  In particular, the conditional plea preserved the following issue for appellate review: "whether United States Forest Service Officer Heath Watkins made two deliberate material misrepresentations in his Affidavit for Search Warrant."  Having reviewed the entire record, we conclude the district court[4] did not clearly err in finding Officer Watkins truthfully and accurately averred that (1) he observed a horse and a headlamp in the September 20, 2010 nighttime surveillance video (the "2010 video"); and (2) he positively identified Brantley as the person observed in the September 22, 2011 surveillance video (the "2011 video").  Accordingly,

---

[1]*See* Fed. R. Crim. P. 11(a)(2) (providing that with the government and district court's consent, "a defendant may enter a conditional plea of guilty . . . , reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion").

[2]*See* 21 U.S.C. § 841(a)(1).

[3]*See* 21 U.S.C. § 853.

[4]Pursuant to the terms of 28 U.S.C. § 636(b)(1)(B), the district court referred Brantley's suppression motion to a magistrate judge for initial proceedings.  Upon de novo review, the district court adopted the magistrate judge's findings.  Thus, we treat the findings of the magistrate judge as the findings of the district court.  *Id.*

exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the

district court's denial of Brantley's suppression motion.

## II.  BACKGROUND

Because the district court's statement of the relevant background facts is

both clear and concise, we set it out in full:[5]

> On September 28, 2011, Officer Heath Watkins, a United
> States Forestry Service Officer, sought a search warrant from the
> District Court in and for McCurtain County, Oklahoma by executing
> an Affidavit for Search Warrant.  The affidavit related a detailed
> property description of the real property to be searched, identified as
> the residence of [Brantley] as well as . . . appurtenances and a cabin
> "used by Carl Gene Brantley and Dale Toon."  Officer Watkins
> testified and the affidavit reflects that in May of 2010, he and other
> officers observed a marijuana patch near Union Valley Road,
> northeast of Eagletown, Oklahoma through aerial reconnaissance by
> helicopter.
>
> On September 23, 2010, Officer Watkins and others went to
> the observed patches and installed a video recording system.
> Officers observed two patches with unharvested marijuana plants
> growing in each.  The factual recitation of Paragraph 14 of Officer
> [Watkins's] affidavit is challenged by [Brantley].  This paragraph
> states as follows:
>
>> On October 6, 2010, Officers went to the patches and
>> found Patch #1 had been completely harvested and Patch
>> #2 had been partially harvested.  The plants had been cut
>> off approximately 12 inches above the ground and

---

[5]Such a course is consistent with this court's obligation to view the facts in the manner most favorable to the government, the prevailing party below. *United States v. Villa-Chaparro*, 115 F.3d 797, 800-01 (10th Cir. 1997) ("When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government.").

completely removed from the patches. Officers reviewed the recordings and on September 30, 2010, approximately 11:37 PM a person on horseback with a headlamp was recorded in the Patch #1 and the person was harvesting the marijuana plants. The person removed the entire marijuana plants from Patches #1 and #2. There were no identifiable images recorded of the suspect.

Officer Watkins testified that he, Agent Alford, and Officer Gary Rose, law enforcement officers with the United States Forestry Service, all reviewed the video from September 30, 2010 frame-by-frame on a computer. Officer Watkins stated that they all had experience in reviewing surveillance videos. According to Officer Watkins, all of these officers observed a person with a headlamp which "blazed," or cast light upon the head and neck of a horse in the dark of night. A review of the video at the hearing revealed a flash of light at frame 411 which Officer Watkins stated also showed a muzzle of a horse. Later in the video at frame 840, more light is observed which shines upon a light colored object; an object identified by Officer Watkins as a horse. At several points in the video between frames 947 and 950, flashes of light are also observed, which Officer Watkins identifies as light from a headlamp.

Officer Watkins stated he has considerable experience with horses, outdoor marijuana cultivation investigations, and observing surveillance videos. He does, however, admit that the statement provided in his affidavit that the person in the video was harvesting the marijuana plants located in Patch #1 was an assumption based upon his later observation that the plants were harvested as it is impossible to discern what the person in the video is actually doing.

The affidavit relates law enforcement's subsequent activity with regard to these and other marijuana patches in the same general vicinity. At Paragraph 16 of the affidavit, Officer Watkins states that [thereafter] unmanned surveillance cameras were installed in Patch #1, #2, and a third discovered patch referenced as Patch #3. The later recovered videos from these cameras revealed activity from August 24, 2011 at approximately 8:30 a.m. The video depicts a man wearing a t-shirt and cargo pants with a cap and blue bandana. The man used a wooden digging tool to strike the ground. In another

-4-

video, the man appears to drop seeds from a plastic baggie and moved his feet as if to move soil.

Officer Watkins testified that he saw [Brantley] to be the man in the video. He also asked the opinion of two other officers who stated they believed the man in the video was [Brantley]. Officer Watkins identified the man in the video as [Brantley] in the affidavit for search warrant. Officer Watkins showed a confidential informant a still photograph from the video and the informant identified the man in the video as [Brantley].

Officer Watkins also obtained a photograph of [Brantley] from a prior incarceration in 2007. He ascertained that [Brantley] was the person in the video.

[Brantley] also challenges the accuracy of Officer [Watkins's] statements at Paragraph 19 of his affidavit. This paragraph sets out the following:

> On September 22, 2011, WATKINS saw CARL BRANTLEY near Eagletown, Oklahoma and positively identified [BRANTLEY] as the person recorded cultivating marijuana in Patch #1 on August 24, 2011.

On September 22, 2011, Officer Watkins met with the confidential informant who told Officer Watkins that he knew where [Brantley] lived. On the way to [Brantley's] residence and while stopped at an intersection, Officer Watkins saw a vehicle driven by a person who Officer Watkins identified on sight as [Brantley]. Officer Watkins identified [Brantley] from his facial structure and ball cap from viewing the video, the still frame photograph from the video, and the 2007 jail photograph of [Brantley]. Additionally, the confidential informant confirmed that the person was [Brantley].

As reflected in Paragraphs 20 and 21 of Officer [Watkins's] affidavit, on September 27, 2011, law enforcement observed that the marijuana plants from Patch #3 had been harvested and the plants were cut off approximately 12 inches from the ground. Officers also noted shod horse tracks were visible on the ground. A review of the video from the surveillance cameras revealed a person harvesting the plants. Additionally, Officer Rose recovered a strand of blue

-5-

tarpaulin material and length of nylon rope at the scene of Patch #3. Officers followed the shod horse tracks from Patch #3 to a cabin located approximately 1/4 to ½ miles from the patch. While the cabin was owned by an individual identified as Dale Toon, Officers were aware that the cabin was used by [Brantley] because Mr. Toon and [Brantley] were business partners. Officers followed the shod horse tracks to the road where they stopped, indicating to law enforcement that the horse was loaded on a trailer. Officers also observed mud and snow tire impressions at the cabin.

Officer Watkins drove past [Brantley's] residence and observed a blue tarpaulin which he believed matched the material found at Patch #3 as well as a horse trailer consistent with the type which left tire impressions at the patch.

At the time the warrant was obtained, Officer Watkins was also aware of a prior investigation of [Brantley] from 2001 where [Brantley] was found to be cultivating and harvesting marijuana plants in Eagletown, Oklahoma from six patches. During that investigation, video surveillance of [Brantley] revealed he harvested at night using lights, the plants were cut off 12 inches from the ground. Upon service of a search warrant on [Brantley's] residence in that prior investigation, officers located dried marijuana leaves and residue in a barn.

Based upon this information, Officer Watkins sought the search warrant. The warrant was signed by a state district judge. Upon execution at [Brantley's] residence on September 29, 2011, law enforcement found several firearms, marijuana and marijuana seeds, a t-shirt and camouflage pants, scales, a blue tarp and a gray tarp covering marijuana plants and seeds, a portable spotlight which can be worn on a cap, a blue bandana, and a dual headed wooden handled tool. Officers seized a total of 17.89 kilograms of marijuana.

Report and Recommendation at 1-7 (footnotes omitted).

After he was indicted, Brantley filed a suppression motion and requested a

*Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) (holding it

is a violation of the Fourth Amendment for an affiant to knowingly and

intentionally, or with reckless disregard for the truth, make a false statement in a warrant affidavit). In relevant part, Brantley asserted Officer Watkins made the following two materially false misrepresentations in the affidavit he submitted in support of the search warrant: (1) the assertion in paragraph 14 of the affidavit that it was possible to observe a headlamp and a horse in the 2010 video; and (2) the assertion in paragraph 19 of the affidavit that it was possible to positively identify Brantley as the person observed harvesting marijuana plants in the 2011 video. After holding an evidentiary hearing, the district court concluded Brantley failed to meet his burden of proving by a preponderance of the evidence that Officer Watkins's affidavit contained intentional misrepresentations. *See United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000) (explaining the opponent of a search warrant bears the burden of proving by a preponderance of the evidence that the affidavit supporting the warrant contained deliberate or reckless false information or material omissions).

## III. DISCUSSION

Brantley appeals, asserting the videos in question conclusively demonstrate Officer Watkins's affidavit contains intentionally false material statements. Br. for Appellant at 12 (asserting it is impossible to detect a horse or headlamp in the 2010 video because the video contains "a stream of indecipherable images, completely devoid of any evidentiary value"); *id.* at 13 (asserting it is "impossible" to identify any individual as the person seen in the 2011 video).

-7-

When reviewing the denial of a suppression motion, this court views the record in the light most favorable to the United States. *United States v. Hendrix*, 664 F.3d 1334, 1337-38 (10th Cir. 2011). The district court's factual findings are not disturbed on appeal unless they are clearly erroneous. *United States v. Hargus*, 128 F.3d 1358, 1361 (10th Cir. 1997). "It is the province of the trial court to assess the credibility of witnesses at the suppression hearing and to determine the weight to be given to the evidence presented, and we must give such determinations due deference." *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999). A district court's factual finding is clearly erroneous only when this court, considering all the evidence, is "left with the definite and firm conviction that a mistake has been made." *United States v. Beaulieu*, 893 F.2d 1177, 1182 (10th Cir. 1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). This is true whether the district court's factual findings are predicated upon assessments of witness credibility or on a consideration of documentary evidence. *Id.* at 573-74.

## A. The 2010 Video

The district court rejected Brantley's assertion that the video quality was too poor for Officer Watkins to observe a headlamp and horse:

> [Brantley] . . . challenges the veracity of the . . . statements at Paragraph 14 concerning the presence of a headlamp and a horse. The testimony indicates that Officer Watkins and Agent Rose have

considerable experience in drug interdiction and observation of surveillance video. While an untrained eye might only see the horse indicated by Officer Watkins upon being told that it is indeed a horse, his prior law enforcement experience is proper to rely upon to support a finding of probable cause. Upon review of the video surveillance evidence from September 30, 2010, this Court does not and cannot conclude Officer Watkins intentionally mislead or presented false information to the state district court in issuing the search warrant from the statements made in Paragraph 14.

Report and Recommendation at 9-10. (citations omitted).

Brantley asserts this court need only review the 2010 video to conclude the district court clearly erred in finding Officer Watkins did not intentionally misrepresent the presence of a horse and headlamp in the video. Having reviewed the video, this court easily rejects Brantley's assertion. Admittedly, like the district court, we think the video, standing alone, is somewhat ambiguous. As Officer Watkins explained at the suppression hearing, however, he is experienced in interpreting nighttime surveillance video and has extensive experience with horses. At the direction of the prosecutor, Officer Watkins walked the district court through the video, correlating the video frame-by-frame with paper copies of certain frames introduced as evidence. After playing the video for the district court, the prosecutor attempted to stop the video, as closely as possible, on the exact frame reflected in the paper exhibits. Officer Watkins discussed each frame, describing the parts of the horse and reins visible on each exhibit. Furthermore, the technology in the courtroom allowed Officer Watkins to highlight for the court on the screen what he was observing. In light of all this

evidence, the district court concluded Officer Watkins was credible and found the affidavit did not contain an intentional misrepresentation in identifying a horse and headlamp in the 2010 video. Having reviewed the 2010 video in light of this record, this court concludes the district court's findings are not clearly erroneous.

## B. The 2011 Video

The district court likewise rejected Brantley's assertion that it was impossible for Officer Watkins to positively identify him as the individual observed cultivating marijuana plants in the 2011 video:

> [Brantley] contends the information provided at Paragraph 19 also contains false information. This Court disagrees. Officer Watkins testified he saw [Brantley] on September 22, 2011 and positively identified him as the person in the surveillance video. Based upon all of the safeguards taken by Officer Watkins to identify [Brantley], including consulting with other law enforcement officers and a confidential informant to confirm his identification, Officer Watkins did not intentionally mislead or provide false information in Paragraph 19 to support the issuance of a search warrant. Officer Watkins had considerable supporting evidence to conclude [Brantley] was the individual in the video, including photographic evidence and [Brantley's] past involvement in marijuana cultivation and harvesting.

Report and Recommendation at 10-11.

In support of his contention the district court's findings in this regard are clearly erroneous, Brantley simply references the district courts "failure" to "direct[ly] comment on the amazingly poor quality of the video, or how no reasonable person could identify anyone from it." Br. for Appellant at 14. Having reviewed the 2011 video, we conclude the district court did not clearly err

-10-

in finding paragraph 19 of the affidavit free of intentional misrepresentation. The 2011 video consists of several clips. In the first clip, the man has a blue bandana covering the bottom portion of this face and is wearing a camouflage ball cap, a dark green t-shirt with a pocket, and beige cargo pants. The remaining clips show what appears to be the same man wearing the same clothes, only without a bandana on his face, walking toward the camera while sowing and planting seeds from a baggie. The man's facial features are clearly visible and in color. When these facts are combined with Officer Watkins's extensive efforts to corroborate his identification of Brantley as the individual in the video, the district court had ample evidence to conclude the challenged statements in paragraph 19 were not the product of intentional or reckless misrepresentation. *United States v. Sanchez*, 725 F.3d 1243, 1247-48 (10th Cir. 2013) (holding that negligence or innocent mistakes are insufficient to justify excisions from an affidavit under *Franks*); *id.* (holding this court reviews for clear error not only determinations as to truth or falsity of statements in an affidavit, but also the intentional or reckless character of such alleged falsehoods).

## IV. CONCLUSION

For those reasons set out above, the order of the United States District Court for the Eastern District of Oklahoma denying suppression is hereby **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge