FILED
United States Court of Appeals
Tenth Circuit

December 20, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

KEITH ALLEN HENDRIX,

　　　　Defendant - Appellant.

No. 10-6240

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:09-CR-00189-D-1)**

---

C. Merle Gile (Fred L. Staggs, with him on the briefs), Oklahoma City, Oklahoma, for Defendant-Appellant.

Suzanne Mitchell, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Virginia L. Hines, Assistant United States Attorney, with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  Introduction

　　　　Keith Allen Hendrix entered a conditional plea of guilty to one count of

Possession with Intent to Distribute in Excess of 50 Grams of Methamphetamine

in violation of 21 U.S.C. § 841(a)(1), and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A). Pursuant to his plea agreement, Hendrix reserved the right to appeal the district court's denial of his motion to suppress evidence seized as a result of a search of his motel room on December 5, 2008. The district court concluded the search was supported by probable cause, and exigent circumstances justified the warrantless entry into the motel room. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. Background

On December 5, 2008, Oklahoma City Police Officers David Hanes, Ryan Robertson, and Yancy Forbes were investigating methamphetamine activity at an Oklahoma City residence. During their investigation, they encountered an individual with methamphetamine residue on his hands who was in possession of methamphetamine paraphernalia. The individual approached Officer Hanes and told him he purchased the methamphetamine from a man named Keith who was staying in Room 327 of the Extended Stay America motel at 4811 N.W. Expressway in Oklahoma City. He also gave a physical description of Keith—approximately 5'6", short brown hair, and somewhat overweight. The informant stated Keith had approximately one to two pounds of methamphetamine in the room and a surveillance camera and video monitor with which he could view the motel's north parking lot. He also stated Keith kept the

-2-

methamphetamine in ziplock bags next to the door so it could be accessible for purchases.

The officers proceeded to the Extended Stay America and parked their cars in a nearby restaurant parking lot. Proceeding along the south side of the motel to its west entrance so as to avoid detection by the video monitor, Officers Hanes and Robertson entered the motel and made contact with the manager.[1] The manager confirmed there was a Room 327 on the north side of the motel and accompanied them to the room, which was accessible through an inside hallway. After arriving at the door to Room 327, Officer Hanes knocked on the door. A female asked who was there, and Officer Hanes gave a false name. When the female responded she did not know anyone by that name, Hanes identified himself as an Oklahoma City Police Officer and turned up the volume on his police radio to confirm his identity as a police officer. Thereupon, Officers Hanes and Robertson heard people moving inside the room, doors opening and closing, and a toilet flushing. These sounds, based upon the officers' training and experience, indicated the occupants of the room were attempting to destroy evidence.

After the occupants of the room refused to open the door, the manager opened it with his electronic key. While Officer Robertson testified he believed

_____

[1]Officer Forbes transported the informant, who did not want his identity disclosed, and stayed with the informant in the parking lot.

Officer Hanes ordered the manager to open the door, Officer Hanes testified the manager did so of his own accord. Before the door was opened, the officers drew their weapons. The door only opened five or six inches because it was latched with a chain. Through the gap in the doorway, officers could see a female flushing the toilet. They also saw a male who matched the informant's description of Keith. The officers ordered the male to open the door, and he complied.

The officers then entered the room, where they saw in plain view several incriminating items, including ziplock bags filled with methamphetamine on a table near the door, empty ziplock bags, and a scale. The officers also saw a video monitor which displayed the motel's north parking lot. Although it was a cold night, the window was open and the screen had been removed. Just outside the window were a bag and coat containing additional evidence of illegal drugs. The officers arrested both occupants of the room, secured the room, and obtained a search warrant. The next day, officers conducted a search of the room pursuant to the warrant. During the search they seized additional drugs and paraphernalia, $32,160.00 in currency, two revolvers, a box of ammunition, and items of dominion and control reflecting the name Keith Hendrix.

## III. Discussion

### A. Standard of Review

When reviewing the denial of a motion to suppress, this court "view[s] the evidence in the light most favorable to the government, accept[s] the district court's findings of fact unless clearly erroneous, and review[s] *de novo* the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011) (quotation omitted).

### B. Probable Cause and Exigent Circumstances

Absent a specific exception to the warrant requirement, police violate the Fourth Amendment by entering a residence without a warrant. *See Payton v. New York*, 445 U.S. 573, 590 (1980). Guests in a motel room are similarly protected from warrantless entries. *United States v. Parra*, 2 F.3d 1058, 1064 (10th Cir. 1993). One such exception is the exigent circumstances doctrine: police may enter a residence without a warrant where such entry is required to prevent the imminent destruction of evidence. *Brigham City v. Stewart*, 547 U.S. 398, 403 (2006). Warrantless entries justified on this basis must be

> (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of the evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

*United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988). On appeal, Hendrix does not contest that the government satisfied the second and third of these requirements, but argues the first and fourth requirements were lacking.

### 1. Probable Cause

Probable cause to search requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) (quotations omitted). Where, as here, probable cause is based on an informant's tip, the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). "These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist . . . . [A] deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." *Quezada-Enriquez*, 567 F.3d at 1233 (citation omitted). An informant's tip which provides "highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity" is more likely to be found sufficient to support probable cause. *Id.* (quotations omitted). Further, an informant's tip is more reliable if it is confirmed by officers' independent observations. *See United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (informant's tip that

-6-

narcotics are being distributed at a particular location can be corroborated through "controlled buy" at that location).

Here, the relevant probable cause inquiry encompasses all of the information available to Officers Hanes and Robertson immediately prior to their first opening the door to Hendrix's motel room.[2]  Before that, the following information was available to the officers:  an informant gave a self-inculpatory statement indicating he purchased methamphetamine the previous day from a person in a specific room of a specific motel.  The informant provided a physical description and first name of the person who sold him the methamphetamine.  The informant gave specific details as to the contents of the room, the amount of methamphetamine kept there, and the room's location in the motel.  The informant was found with methamphetamine and drug paraphernalia on his person at the time he gave the information, and was willing to accompany the officers to the motel.

Upon arrival at the motel, the officers were able to confirm the motel was located at the address the informant provided.  The motel had a room 327 located on its north side which was occupied.  In response to Officer Hanes's identification of himself as a police officer, the officers heard considerable

_____

[2]The officers needed neither probable cause nor even reasonable suspicion to speak with the occupants while standing outside the closed door to the motel room.  *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264–65 (10th Cir. 2006) (approving "knock and talk" procedure).

movement, opening and closing of doors, and a toilet flushing. All of this information provided sufficient independent corroboration of the informant's tip that methamphetamine-related activity was likely occurring in the motel room. Hendrix's challenge to the search of the motel room on the basis that it lacked probable cause must therefore fail.

### 2. Creation of the Exigency

The officers were justified in believing the commotion in the motel room indicated its occupants were attempting to destroy evidence. *See United States v. Carr*, 939 F.2d 1442, 1447–48 (10th Cir. 1991). On appeal, Hendrix does not contend there were no exigent circumstances justifying entry. Rather, he contends the officers impermissibly "created the exigency" through bad-faith avoidance of the warrant requirement. The officers' bad faith, Hendrix argues, is shown by their decision to go directly to the motel room at night without first seeking a warrant or further corroboration of the informant's tip, giving a false name, and continually demanding entry after initially being refused. The court need not consider whether these actions are sufficiently indicative of bad faith because the Supreme Court's recent decision in *Kentucky v. King*, 131 S. Ct. 1849 (2011), obviates the need for such an analysis.

In *King*, the Court held "Where . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is

-8-

reasonable and thus allowed." 131 S. Ct. at 1858. In a footnote, the Court also described the limits of its holding: "There is a strong argument to be made that, at least in most circumstances, the exigent circumstances rule should not apply where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission unless admitted." *Id.* at 1858 n.4. The Court explicitly rejected an approach, previously relied upon by some courts, that determined whether police impermissibly create the exigency by looking to whether officers acted in bad faith. *Id.* at 1859. Hendrix makes no argument that Officers Hanes or Robertson created the exigency by "engaging or threatening to engage in conduct that violates the Fourth Amendment." *Id.* at 1858. He also makes no showing that Officers Hanes or Robertson threatened to enter the motel without permission unless admitted. The record before the court also does not suggest any factual basis for such an argument. The district court therefore properly determined the warrantless entry and subsequent search of Hendrix's motel room was justified under the exigent circumstances exception to the warrant requirement.

## IV. Conclusion

For the foregoing reasons, the court **AFFIRMS** the decision of the district court.