**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL ALVARES FYKES,

      Defendant-Appellant.

No. 16-1034
(D.C. No. 1:15-CR-00221-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH** and **O'BRIEN**, Circuit Judges.[**]
_____

This appeal involves issues of probable cause, the meaning of
constructive possession, and the reasonableness of a sentence. The case
began with a 911 call, in which the caller stated that two men in a red

---

[*]     This order and judgment does not constitute binding precedent
except under the doctrines of law of the case, res judicata, and
collateral estoppel. But the order and judgment may be cited for its
persuasive value under Fed. R. App. P. 32.1(a) and Tenth Cir. R.
32.1(A).

[**]     The Honorable Neil Gorsuch heard oral argument but did not
participate in this order and judgment. The practice of this court
permits the remaining two panel judges if in agreement to act as a
quorum in resolving the appeal. *See* 28 U.S.C. § 46(d); *see also*
*United States v. Wiles*, 106 F.3d 1516, 1516 n* (10th Cir. 1997)
(noting that this court allows remaining panel judges to act as a
quorum to resolve an appeal).

sedan were forcing a woman to engage in prostitution. The 911 call led the police to arrest two occupants of a red sedan. One of them was the defendant, Mr. Michael Fykes.

The police then searched the sedan and found a backpack containing a handgun. Mr. Fykes admitted that he owned the backpack but denied ownership of the handgun; he claimed that he had loaned his backpack to the other man (Mr. Ron Trueblood), who presumably had placed the handgun inside the backpack.

After a jury trial, Mr. Fykes was convicted under 18 U.S.C. § 922(g)(1), which prohibits a convicted felon from possessing a firearm. The sentence included 60 months' imprisonment and 3 years' supervised release.

Mr. Fykes raises two challenges to his conviction.

*First*, Mr. Fykes asserts that the police lacked probable cause for the arrests. Absent probable cause, the police could not later conduct an inventory search of the sedan and find the handgun. We reject this assertion, holding that the police had probable cause for the arrests.

*Second*, Mr. Fykes challenges the jury instruction defining "constructive possession." As Mr. Fykes argues, the instruction failed to include an element of constructive possession: intent to exercise dominion or control over the handgun. This challenge was not raised in district court; thus, we apply the plain-error standard.

2

The government concedes the existence of an obvious error. The dispositive issue is whether the omission of the intent element affected Mr. Fykes's substantial rights by creating prejudice. Mr. Fykes cannot satisfy this standard in light of the way that constructive possession was disputed at trial. The parties presented dramatically opposed theories: The government argued that Mr. Fykes owned the gun; he denied ownership. The finding of guilt suggests that the jury credited the government's argument that Mr. Fykes had owned the gun. If the jury regarded Mr. Fykes as the owner of the gun, the error in the jury instruction would have made little difference. Other circumstances could conceivably have suggested prejudice. But Mr. Fykes has not pointed to any other reason to consider the error prejudicial.

Mr. Fykes also challenges the procedural and substantive reasonableness of his sentence. At sentencing, the district court imposed a prison term that exceeded the guideline range, explaining that the guidelines did not fully account for Mr. Fykes's extensive criminal history and lack of remorse. These factors led the court to apply both a departure and a variance. The court erred by departing because departures require notice, which the court failed to provide. But the variance was procedurally and substantively reasonable. Thus, we affirm the sentence.

I.     **Probable Cause**

3

In district court, Mr. Fykes moved to suppress evidence that a gun had been in the backpack. In the motion, he argued that the police had lacked probable cause for the arrests, which would have precluded the subsequent inventory search of the sedan. The district court denied the motion to suppress, concluding that the police had probable cause for the arrests. This conclusion was correct.

In determining whether probable cause existed, we engage in de novo review. *United States v. Huff*, 782 F.3d 1221, 1225 (10th Cir. 2015). Through this review, we consider the evidence in the light most favorable to the prosecution and accept the trial court's factual findings unless they are clearly erroneous. *United States v. Brinson*, 772 F.3d 1314, 1324 (10th Cir. 2014).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment requires a warrant to search one's "effects" unless an exception applies. *See Cady v. Dombrowski*, 413 U.S. 433, 439 (1973).

Vehicles are considered "effects" within the meaning of the Fourth Amendment. *Id.* Thus, the police would ordinarily need a warrant to search

4

the sedan. Because the police had no warrant, the presence of the firearm would be admissible only upon satisfaction of an exception to the warrant requirement.

The government relies on the exception for inventory searches. Under this exception, the police may inventory a vehicle's contents under appropriate circumstances. *South Dakota v. Opperman*, 428 U.S. 364, 369-76 (1976).[1] One such circumstance is when the police impound a vehicle that would otherwise be stranded when everyone in the vehicle is arrested. *See United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1996).

Mr. Fykes contends that the evidence should have been excluded based on the absence of probable cause for the arrests. If either arrest was unlawful, the police could not have impounded and inventoried the sedan, for Mr. Fykes or Mr. Trueblood could have driven the sedan away. And in the absence of a lawful impoundment or inventory, evidence discovered in the inventory search would ordinarily have been inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). But, in our view, the police could impound the vehicle and conduct an inventory search because probable cause existed for the arrests of Mr. Fykes and Mr. Trueblood.

Probable cause exists when "under the totality of the circumstances . . . a reasonable person [would] believe that an offense has been or is

---

[1] The search must follow standard law enforcement procedures. *Opperman*, 428 U.S. at 372. But Mr. Fykes does not challenge the search based on a failure to follow standard law enforcement procedures.

being committed by the person arrested." *United States v. Muñoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (quoting *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir. 2006)). In our view, the arresting officer (Detective Lisabeth Reid) could reasonably believe that Mr. Fykes and Mr. Trueblood had committed two Colorado crimes, human trafficking and pimping.

Colorado law defines human trafficking and pimping:

> [Human trafficking:] A person who knowingly sells, recruits, harbors, transports, transfers, isolates, entices, provides, receives, or obtains by any means another person for the purpose of coercing the person to engage in commercial sexual activity commits human trafficking for sexual servitude.

Colo. Rev. Stat. § 18-3-504(1)(a) ("Human trafficking for sexual servitude").

> [Pimping:] Any person who knowingly lives on or is supported or maintained in whole or in part by money or other thing of value earned, received, procured, or realized by any other person through prostitution commits pimping, which is a class 3 felony.

Colo. Rev. Stat. § 18-7-206 ("Pimping").

The police received a 911 call from a man (Alfred) stating that he was with a frightened, crying woman. According to Alfred, the woman was a prostitute who feared her two "pimps" waiting outside in a red four-door sedan. Alfred identified himself by name and provided the police with his location. At the end of the call, Alfred explained that the woman had left

the apartment and had possibly entered the sedan. R. vol. 1, at 174-75 (911 transcript).

The information from the call was transmitted to some responding officers, who had callscreens in their vehicles. Detective Reid did not have a callscreen in her vehicle, but the information she received from dispatch was "similar or identical" to the information that Alfred shared during the call. R. vol. 6, at 117.

Before Detective Reid arrived at the scene, the other responding officers had spoken with Mr. Fykes. In those conversations, Mr. Fykes admitted that that he and Mr. Trueblood had come to pick up the woman. *Id.* at 53, 126.

Upon arrival, Detective Reid observed the woman and tried to speak with her. According to Detective Reid, the woman was crying and shaking and appeared too scared to talk. *Id.* at 120.

Unable to speak with the woman, Detective Reid interviewed Alfred, who stated that he had hired the woman for sexual services, finding her on a website (backpage.com). *Id.* at 121-22. From experience, Detective Reid knew that (1) prostitutes frequently advertise on backpage.com for sexual services and (2) individuals like Alfred do not typically admit to hiring prostitutes. This knowledge solidified Detective Reid's belief that Alfred's story was truthful.

After speaking with Alfred, Detective Reid again tried to speak with the woman. By this point, the woman had begun to shake more violently and said that she was having an anxiety attack. *Id.* at 125. In Detective Reid's experience, the woman's demeanor was consistent with someone victimized by human trafficking.

Detective Reid then spoke to the other responding officers, who shared what they had learned. Following that discussion, Detective Reid decided to arrest Mr. Fykes and Mr. Trueblood.

The issue here is whether Detective Reid's information constituted probable cause to believe that the men were committing human trafficking or pimping. For probable cause, the information had to be sufficient for Detective Reid to reasonably infer that the woman was a prostitute, that Mr. Fykes and Mr. Trueblood were pimps for the woman, and that the woman feared Mr. Fykes and Mr. Trueblood. Therefore, we must determine whether these inferences would have been reasonable based on the facts known to Detective Reid.

The reasonableness of these inferences turns primarily on Alfred's reliability as an informant. In gauging the reliability of an informant, we consider the "totality of the circumstances." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). These circumstances include (1) the informant's "veracity, reliability, and basis of knowledge" and (2) other indicia of a tip's

8

reliability, such as corroboration by an officer's independent observations. *Id.*; *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011). These factors support Alfred's reliability.

*Veracity*. Veracity is often suggested by a tipster's

- making of an admission against penal interest,

- use of the 911 emergency system,

- making of a contemporaneous report, and

- self-identification.[2]

All of these factors suggested that Alfred was honest. Alfred acknowledged his own crime (hiring a prostitute for sexual services), used the 911 emergency system, provided his observations contemporaneously as the events unfolded, and identified himself. Thus, this factor supports the reliability of Alfred's information.

*Basis of Knowledge*. "[F]or basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). Information is more likely to be firsthand when the reported details are "highly specific or personal." *See United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011).

---

[2]    *See Navarette v. California*, 134 S. Ct. 1683, 1689-90 (2014) (911 emergency system and contemporaneous reporting); *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (against penal interest); *United States v. Copening*, 506 F.3d 1241, 1247 (10th Cir. 2007) (self-identification).

Alfred observed the events firsthand and provided specific, personal details showing his firsthand knowledge: He described the woman's frightened demeanor, stated that the men were in a red four-door sedan, and identified the website he had used to hire the prostitute. As a result, this factor suggests that Alfred's information was reliable.

*Corroboration*. Detective Reid corroborated much of the information provided in the 911 call. For example, the woman's frightened demeanor matched Alfred's description and was consistent with his statement that the woman was a prostitute. In addition, Detective Reid knew from experience that the website identified by Alfred—backpage.com—was used by prostitutes selling sexual services. Finally, Detective Reid learned that the individuals inside the red sedan were the individuals that Alfred had seen. That sedan partially matched Alfred's description,[3] and Mr. Fykes admitted that he and Mr. Trueblood had come to pick up the woman.

The facts resemble those in *United States v. Hendrix*, 664 F.3d 1334 (10th Cir. 2011). There the police found an individual carrying drugs who said that he had bought the drugs in a specific motel room. *Hendrix*, 664

---

[3]    Alfred's description of the sedan was not perfect. The sedan was described as a red four-door Chevy Malibu, but it was actually a red four-door Pontiac. R. vol. 6, at 67. We consider this inconsistency as part of the "totality of the circumstances," but the inconsistency is minor and does not preclude probable cause. *See United States v. Traxler*, 477 F.3d 1243, 1247 (10th Cir. 2007) (explaining that a "minor inconsistency in the informant's tip"—that the defendant's truck was white, but the informant had reported it as black—did not defeat a finding of probable cause in light of the other circumstances).

F.3d at 1339. The police confirmed that a motel existed at the address provided and that the specific room was occupied. *Id.* When the police knocked on the motel room door and identified themselves, they heard movement, doors opening and closing, and a toilet flushing. *Id.* at 1337, 1339. We concluded that this information had "provided sufficient independent corroboration" of the informant's tip to supply probable cause for a search of the motel room. *Id.* at 1339.

Our case is similar. In both *Hendrix* and our case,

- the tipster made an incriminating statement and

- the arresting officers independently corroborated the substance of the tip.

The tip was considered reliable in *Hendrix*, and Alfred's tip was equally reliable.

* * *

Mr. Fykes denies probable cause, contending that

- after receiving the 911 call, the police did not receive any additional evidence of a crime and

- the only person who had used the word "prostitute" or "pimp" was Alfred.

The first assertion is incorrect. Detective Reid obtained new information when she arrived on the scene. For instance, she observed the woman's demeanor and learned that Alfred had hired the woman as a prostitute based on an advertisement in backpage.com. The second assertion is not

11

dispositive. Regardless of whether Alfred was the only person using the word "prostitute" or "pimp," probable cause existed. Alfred's terminology is secondary; more relevant is what he said was happening and what Detective Reid observed.

\* \* \*

We conclude that Detective Reid reasonably believed that the woman was a prostitute who feared her pimps (Mr. Fykes and Mr. Trueblood). As a result, Detective Reid had probable cause to believe that Mr. Fykes and Mr. Trueblood were engaged in human trafficking or pimping.[4] In light of the existence of probable cause, we uphold the district court's denial of Mr. Fykes's motion to suppress.

---

[4]    Mr. Fykes suggests that Detective Reid's failure to specify the charge for Mr. Fykes's arrest precludes a finding of probable cause. We disagree. If an officer objectively has probable cause to believe that a crime has been committed, the officer's intentions are irrelevant. *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015).

12

## II.    The Jury Instruction

The jury ultimately found that Mr. Fykes had possessed a handgun. The jury reached this finding after being instructed on constructive possession: "A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it." R. vol. 1, at 418. Under this instruction, the jury could find that Mr. Fykes had constructive possession over the handgun if he knew about it and had the power to exercise dominion or control. Mr. Fykes challenges this instruction. We reject the challenge under the plain-error standard.

### A.    The Change in the Law

During this appeal, the law changed when our court held that constructive possession contains an additional element: intent. It is now no longer enough to show that Mr. Fykes knew about the handgun and could control it. Instead, the government also needed to show that Mr. Fykes had intended to exercise dominion or control. *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016).

### B.    The Plain-Error Standard

Because Mr. Fykes did not raise this objection in district court, our review is only for plain error. *See United States v. Lin*, 410 F.3d 1187, 1190 (10th Cir. 2005). The plain-error standard contains four elements:

13

1.    The district court made an error.

2.    The error was plain.

3.    The error affected the defendant's substantial rights.

4.    The error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Mendiola*, 696 F.3d 1033, 1036 (10th Cir. 2012) (citation omitted).

The government concedes that the first two prongs of the plain-error test are satisfied: the existence of an error and the plain nature of the error. We agree with the parties that the first two prongs are satisfied. The parties' disagreement involves the third and fourth prongs: whether the error (1) affected Mr. Fykes's substantial rights and (2) seriously affected the fairness, integrity, or public reputation of judicial proceedings.

We focus on the third prong, which requires Mr. Fykes to show that the error affected his substantial rights. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (en banc). To satisfy that burden, Mr. Fykes "must show 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). Mr. Fykes has not satisfied that burden.

## C.    The Trial and the Parties' Theories

The police searched the sedan's trunk, finding a backpack that contained a handgun. Mr. Fykes admitted that the backpack was his but denied knowing about the handgun. He explained that he had loaned the backpack to Mr. Trueblood, who needed to use the backpack because he was moving. According to Mr. Fykes, the handgun was presumably Mr. Trueblood's. Mr. Fykes insisted that he did not know about the handgun because he had not looked inside the backpack after loaning it to Mr. Trueblood.

The government disputed this account, arguing that the handgun was Mr. Fykes's. To support this theory, the government pointed to other items inside the backpack that suggested Mr. Fykes's ownership of the backpack's contents:

- Mr. Fykes's passport,

- a laptop computer that contained Mr. Fykes's medical document,

- cell phone chargers that fit Mr. Fykes's cell phones, and

- a container of cigarillos like those found close to Mr. Fykes's seat.

In response, Mr. Fykes claimed that he had forgotten that his passport was inside his backpack, that he had previously used the laptop computer to check his email and download the document, that the cell phone chargers were generic and fit many cell phones (including Mr.

15

Trueblood's), and that he smoked cigarettes rather than cigarillos. Mr. Fykes added that no fingerprints had been found on the gun and that a fingerprint on the laptop was not his.[5]

In turn, the government replied that Mr. Fykes would not likely have forgotten about his passport or left his medical document on another person's computer.[6] The government also pointed out that Mr. Trueblood already had his cell phone chargers. Finally, the government's expert testified that it was uncommon for fingerprints to be found on handguns.

**D.    Absence of Prejudice**

The jury found that Mr. Fykes had possessed the handgun. The jury was not instructed on intent, but necessarily rejected Mr. Fykes's "lack of knowledge" theory. Faced with the parties' dual theories, the jury likely adopted the government's theory that the handgun was Mr. Fykes's.

Mr. Fykes argues that the jury might have harbored doubt about intent. For instance, the jury might have believed that Mr. Fykes had known about the gun even though it was not his. He contends that under

---

[5]    In addition, Mr. Fykes pointed out that although Mr. Trueblood had told the police he did not own any guns, Mr. Trueblood had purchased an unrelated firearm in May 2014. As a police officer testified, however, Mr. Trueblood could have sold the firearm before being confronted by police in February 2015.

[6]    The document contained psychological and financial information that Mr. Fykes testified he had not told anyone about. In addition, Mr. Fykes admitted that when he had allegedly downloaded the document onto the computer, he had known Mr. Trueblood for only about one to three months.

this scenario, the jury would have found guilt under the erroneous jury instruction but found Mr. Fykes not guilty under a proper instruction. We reject this contention. In light of the parties' theories and the evidence presented, the jury more likely regarded Mr. Fykes as the owner of the handgun.

The jury did not reject Mr. Fykes's "lack of knowledge" theory in a vacuum. The government had linked Mr. Fykes to the contents of the backpack through the passport, laptop, cigarillos, and cell-phone chargers. The government did not suggest any reason to find Mr. Fykes guilty if the gun had belonged to Mr. Trueblood. Therefore, in finding guilt, the jury probably believed that Mr. Fykes had owned the handgun and was using his backpack. That belief would likely have caused the jury to find an intent to exercise dominion or control of the handgun. In these circumstances, we conclude that Mr. Fykes has not satisfied his burden to show prejudice.

This conclusion is consistent with our case law. Typically, defendants can satisfy their burden on prejudice by presenting a compelling reason to believe that the jury might have been misled. For example, we have found prejudice when an erroneous instruction allowed the jury to improperly circumvent the defendant's trial theory, when the prosecutor invited the jury to rely on the instruction's error, or when there was other evidence of jury confusion. *See, e.g.*, *United States v. Simpson*, No 15-1295, slip op. at 43-46 (10th Cir. Jan. 10, 2017) (to be published)

17

(finding a likelihood of prejudice when the prosecutor invited the jury to consider the evidence in a way that likely caused the jury to rely on the error in the jury instructions); *United States v. Bader*, 678 F.3d 858, 869 (10th Cir. 2012) (same); *United States v. Serawop*, 410 F.3d 656, 670 (10th Cir. 2005) (finding a likelihood of prejudice when the jury instruction omitted the mens rea element of voluntary manslaughter and the defendant's trial theory centered on that element); *United States v. Duran*, 133 F.3d 1324, 1333 (10th Cir. 1998) (finding a likelihood of prejudice when a jury question suggested confusion over the substance of the instruction's error).

By contrast, our case law indicates that it is not enough for a defendant to make a conclusory, speculative statement that the jury was misled by an erroneous jury instruction. For example, we have declined to find prejudice when the defendant simply explains how the instruction's erroneous language could theoretically have misled the jury, but fails to provide any supporting reason for how the jury in that particular case might have been misled. *See United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008) ("This unsupported statement, [explaining that the language of the erroneous jury instruction could have misled the jury,] without more, is not enough to show that jurors did, in fact, consider evidence [improperly] in determining the[] [defendant's] guilt.").

18

Mr. Fykes has not provided any specific reason to believe that the jury might have been misled by the erroneous jury instruction. And, as explained above, his trial theory suggests that the instruction had little impact on the outcome. At trial, Mr. Fykes argued that he had not known that the handgun was inside his backpack. The government countered that the handgun was owned by Mr. Fykes, who was using his backpack at the time. In light of the guilty verdict, the jury likely adopted the government's version of events. *See United States v. Williams*, 344 F.3d 365, 378-79 (3d Cir. 2003) (holding that an alleged error in jury instructions on constructive possession did not affect the defendant's substantial rights because the jury had apparently credited the government's version of events, which would have required conviction even if the jury had been correctly instructed).

If the jury had adopted the government's version, a different instruction on intent would probably not have mattered: If Mr. Fykes owned the gun, he probably intended to exercise dominion or control over the gun. Accordingly, we reject Mr. Fykes's challenge to the erroneous jury instruction.

## III. The 60-Month Sentence

After the jury found guilt, the district court sentenced Mr. Fykes above the applicable guideline range. In doing so, the court pointed to Mr.

19

Fykes's criminal history and lack of remorse. Mr. Fykes argues that his sentence is procedurally and substantively unreasonable. We disagree.

## A. The Sentencing

The district court sentenced Mr. Fykes to 60 months' imprisonment. In deciding on this sentence, the court calculated the guideline range and explained the reasons for deviating from that range.

The court calculated the guideline range at 41 to 51 months. For this calculation, the court noted that Mr. Fykes's base level was 20. The court then found that Mr. Fykes's criminal history category was 3, as he had 4 criminal-history points. Three of the criminal-history points were based on his 1992 crack-cocaine conviction; the remaining criminal-history point was based on a conviction for driving while intoxicated.

After calculating the guideline range, the district court concluded that the guidelines understated Mr. Fykes's criminal history. R. vol. 6, at 821 ("The overall picture is much different, in my view, than a level III."); *see also id.* at 818 ("What bothers me about this case, mostly, is that I think the criminal-history level of III[] . . . substantially understates his criminal history."). The court noted that Mr. Fykes had numerous convictions not triggering criminal-history points. *Id.* at 818-820. In addition, the court considered Mr. Fykes's lack of remorse, as evidenced by his continuous crimes and failure to appear in court after multiple DUI charges. *Id.* at 816 ("It doesn't appear to me that this youngster has learned

20

his lesson, as he gets into middle age."); *id.* at 821 ("And it bothers me that he just blows these things off and doesn't care, he just disappears and goes to another state and does some more driving and drinking, and I am taking that into consideration.").

These considerations led the district court to impose a sentence nine months above the top of the guideline range. The court characterized the sentence as both a departure and a variance. When the probation officer asked the court whether the sentence was a departure or a variance, the court replied that the sentence was both: "I'll say that I chose both. That way, if I'm wrong on one, I'll be right on the other." *Id.* at 823-24.

## B. Procedural Reasonableness

We review a sentence for reasonableness, asking whether the court abused its discretion. *United States v. Lente*, 759 F.3d 1149, 1155 (10th Cir. 2014). Reasonableness has procedural and substantive components. *Id.* Mr. Fykes first invokes the procedural component, essentially arguing that the district court did not "us[e] the proper method to calculate the sentence." *Id.* We reject this argument.

## 1. Combination of a Departure and Variance

Mr. Fykes contends that the district court procedurally erred by departing from the applicable sentencing range without providing the necessary notice. But Mr. Fykes did not object in district court to the

departure. Thus, our review here is confined to the plain-error standard. *See* pp. 13-14, above.

A departure ordinarily requires notice. *See* Fed. R. Crim. P. 32(h) ("Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure."). And the court did not provide notice. Thus, we can assume, for the sake of argument, that the failure to provide notice constituted an obvious error.

Nonetheless, the challenge would fail at the third prong of the plain-error standard because the error was not prejudicial. The deviation constituted not only a departure, but also a variance. And a variance does not require advance notice. *Irizarry v. United States*, 553 U.S. 708, 716 (2008).

Mr. Fykes contends that his sentence involved only a departure, not a variance. For this contention, Mr. Fykes states that the oral pronouncement was ambiguous, requiring us to consider the written judgment. According to Mr. Fykes, the written judgment supports characterization of the sentence solely as a departure. We reject Mr. Fykes's characterization of the sentence.

A district court may issue both a variance and a departure; the court does not need to choose one over the other, and the court does not

22

necessarily need to discuss each one separately. *See United States v. Martinez-Barragan*, 545 F.3d 894, 901 (10th Cir. 2008) ("Departures and variances are analytically distinct[] . . . . But a sentencing judge does not commit reversible error by consolidating the two discussions."); *see also United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1220 (10th Cir. 2008) ("[W]e first determine whether the district court departed upward, varied upward, *or both departed and varied upward . . . .*" (emphasis added)).

The court unambiguously stated that it was both departing and varying; thus, we need not consult the written judgment. *United States v. Villano*, 816 F.2d 1448, 1450-51 (10th Cir. 1987) (en banc). Because the sentence involved both a departure and a variance, the failure to provide advance notice was not prejudicial under the third prong of the plain-error standard.

## 2. Adequacy of the Explanation for the Variance

Mr. Fykes also argues that a variance would be procedurally unreasonable because the district court failed to properly discuss the sentencing factors stated in 18 U.S.C. § 3553(a). He did not raise this challenge in district court; thus, we review this challenge under the plain-error standard. *See* pp. 13-14, above. Because the court properly discussed the § 3553(a) factors, we reject Mr. Fykes's challenge.

23

District courts have discretion to impose non-guideline sentences. *Pepper v. United States*, 562 U.S. 476, 501 (2011). But a district court must show that it "considered the parties' arguments and has a reasoned basis for exercising [the district court's] own legal decisionmaking authority." *United States v. Lente*, 759 F.3d 1149, 1156 (10th Cir. 2014) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). In showing the reasonableness of this basis, the court must explain its sentencing decision based on the facts and the § 3553(a) sentencing factors.[7] 18 U.S.C. § 3553(c)(2); *United States v. Mendoza*, 543 F.3d 1186, 1192 (10th Cir. 2008). The court must consider each factor. *Mendoza*, 543 F.3d at 1191. But explicit discussion of every factor is unnecessary. *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012). And no magic words are necessary for a proper discussion. *United States v. Pinson*, 542 F.3d 822, 833 (10th Cir. 2008).

The district court properly exercised its discretion to vary from the guidelines. The court pointed to Mr. Fykes's criminal history and lack of

---

[7]    We have summarized the § 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the recommended Guidelines range; (5) the policies underlying the Guidelines; (6) the need to avoid unwarranted sentencing disparities; and, (7) the need for restitution to any victims.

*United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 n.9 (10th Cir. 2014).

24

remorse. *See* 18 U.S.C. § 3553(a)(1) ("the history and characteristics of the defendant"); *id.* § 3553(a)(2) ("the need for the sentence imposed").

At oral argument, Mr. Fykes acknowledged that these are appropriate justifications for an upward variance. But he argued that the court mentioned those justifications only to support a departure, not a variance. In his view, "[t]he court gave no 'specific reasons' why it was imposing [a variance] and instead gave only one hypothetical reason why it might do so." Appellant's Opening Br. at 26 (quoting 18 U.S.C. § 3553(c)(2)).

We disagree. The court noted Mr. Fykes's criminal history and lack of remorse and then observed that a variance would be appropriate if the criminal-history level had been understated by the guidelines. These comments suggest that the court was explaining its decision to *vary* upward as well as to *depart* upward. Thus, we conclude that the sentence was procedurally reasonable.

## C.    Substantive Reasonableness

Finally, Mr. Fykes challenges the substantive reasonableness of his sentence. We reject this challenge.

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Lente*, 759 F.3d 1149, 1155 (10th Cir. 2014) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)). We review the substantive

25

reasonableness of a sentence for an abuse of discretion. *Id.* at 1158. "Under this standard, we will 'deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable.'" *Id.* (quoting *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)).

According to Mr. Fykes, the district court should have "equitably reduced" the sentence in light of a change in the law affecting treatment of his 1992 crack-cocaine conviction.[8] Appellant's Opening Br. at 36. Mr. Fykes argues that if his 1992 conviction had taken place under current law, the guideline range and resulting sentence for that conviction would have been shorter, rendering the conviction too old to trigger any criminal history points for use in the present case.[9] We reject this assertion because the district court

---

[8]    The government argues that this challenge involves procedural reasonableness but not substantive reasonableness. We disagree.

Mr. Fykes's brief does contain some stray statements that implicate procedural reasonableness. For example, in his summary of argument and one of his argument headings, Mr. Fykes states that the court improperly calculated his guideline range; this challenge would be procedural rather than substantive. *United States v. Hamilton*, 587 F.3d 1199, 1219 (10th Cir. 2009). But Mr. Fykes does not support this assertion with any argument. Any such procedural argument is therefore waived. *United States v. Hamilton*, 510 F.3d 1209, 1218 n.5 (10th Cir. 2007).

[9]    In district court, Mr. Fykes did not object to the substantive reasonableness of his sentence. Defendants need not object to preserve a claim that a sentence is unreasonably long. *United States v. Vasquez-Alcarez*, 647 F.3d 973, 976 (10th Cir. 2011). But we have suggested that a defendant may forfeit the specific argument being made here: that the

26

- provided a reasonable explanation for declining to shorten the sentence based upon the 1992 conviction and

- otherwise justified the extent of the variance.

On the first point, the staleness of a prior conviction may affect the reasonableness of a sentence. *See United States v. Chavez-Suarez*, 597 F.3d 1137, 1138 (10th Cir. 2010). Here, however, the district court explained why it did not treat the 1992 conviction as stale. The court noted that even if the guideline range for that offense had been lower, there was no way to know whether the trial court in 1992 would have issued a sentence within the guideline range. This explanation was not arbitrary, capricious, whimsical, or manifestly unreasonable.

On the second point, we consider the district court's justification for the variance. *See United States v. Singer*, 825 F.3d 1151, 1159 (10th Cir. 2016) ("When a district court decides to impose a sentence above the advisory Guidelines range, it 'must consider the extent of the deviation [from the Guidelines] and ensure that the justification is sufficiently compelling to support the degree of variance.'" (alteration in original) (citation omitted)). In doing so, we give "due deference" to the district

---

"sentence's accounting for [an] old conviction is substantively unreasonable." *Id.* at 976-77.

We face the same potential issue here, but "we need not decide whether there was forfeiture because [Mr. Fykes's] sentence can be affirmed under either plain error or abuse of discretion review." *Id.* at 977.

27

court's explanation. *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1216 (10th Cir. 2008) (quoting *United States v. Muñoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008)).

The district court explained the variance, expressing dissatisfaction with the criminal-history category and explaining that if the category had been 1 level higher (4 rather than 3), the guideline range would have been 51 to 63 months. The court used that hypothetical range to arrive at a sentence of 60 months. This approach was permissible. *See United States v. Lente*, 759 F.3d 1149, 1167 (10th Cir. 2014). Thus, we conclude that the sentence was substantively reasonable.

## IV. Disposition

For these reasons, we affirm the conviction and sentence.

Entered for the Court

Robert E. Bacharach
Circuit Judge