**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ZARION BUTLER,

    Defendant - Appellant.

No. 24-3067
(D.C. No. 2:21-CR-20027-JAR-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **KELLY**, and **CARSON**, Circuit Judges.**
_____

Defendant-Appellant, Zarion Butler ("Zarion"), appeals from the district

court's imposition of an above-guideline sentence after he pled guilty to forcible

assault on a federal officer, 18 U.S.C. §§ 111(b) and 2, and use of a firearm in

furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii).  Aplt. Br. at 10–11.

Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we

affirm.

---

\* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

\** After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

**Background**

The parties are familiar with the facts, and we need not restate them at length.[1] Briefly, on August 3, 2020, Kansas City Kansas Police Department ("KCKPD") responded to a drive by shooting at a home belonging to the Butler family on Farrow Avenue in Kansas City, Kansas.  II R. 37.  Zarion lived at the home with his brother G'Ante Butler ("G'Ante").  Id.  Zarion and G'Ante were both affiliated with the "Tasha Gang."  Id.  Another Tasha Gang affiliate, Tamani Boykin, was injured in the shooting.  Id.  The suspected shooter was Isaiah Shields, a member of Tasha Gang's rival, "BBUx2 Gang."  Id. at 37–38.  KCKPD officers and ATF agents went to Mr. Shields's last known address on North Allis Street in Kansas City, Kansas, where they took Mr. Shields into custody and executed a search warrant.  Id. at 38.  While leaving that residence around 11:30 p.m., officers were fired upon by multiple shooters from an alley west of the home.  Id.  One ATF agent sustained a gunshot wound in his hand while a civilian, J.B., was shot in both hands.  Id.  Also damaged in the gunfire were law enforcement vehicles and neighboring houses.  Id.  Over 100 shell casings were later found in the alley.  Id. at 39.

Evidence gathered during the investigation of the shooting led officers to believe that Zarion, G'Ante, Chase Lewis, Nadarius Barnes, and Donnell Hall carried out the North Allis Street shooting to retaliate against BBUx2 Gang for the earlier shooting at the Butler family's Farrow Avenue home.  Id. at 41–42.  On June 7, 2021,

---

[1] For a more detailed account of the facts, see the decision in a companion appeal, United States v. Butler (G'Ante), No. 24-3061.

2

Zarion was arrested in connection with the shooting. <u>Id.</u> at 42. In a post-<u>Miranda</u> interview, he stated that, on the night in question, he thought that members of the BBUx2 Gang were at Mr. Shields's home celebrating the prior shooting on the Butler family's home. <u>Id.</u> Therefore, Zarion, G'Ante, Mr. Lewis, Mr. Barnes, and Mr. Hall decided to retaliate. <u>Id.</u> They went to Mr. Shields's North Allis Street home and began firing. <u>Id.</u> Zarion, G'Ante, Mr. Lewis, Mr. Barnes, and Mr. Hall were charged with forcible assault on a federal officer, 18 U.S.C. §§ 111(b) and 2, and use of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii). I R. 44–45. Zarion pled guilty to both counts without a plea agreement and proceeded to sentencing.[2] II R. 36–37; III R. 38–69.

The Presentence Investigation Report ("PSR") calculated a guideline range of 33 to 41 months' imprisonment for count one, and a statutory minimum of 120 months' imprisonment for count two to be imposed consecutively with count one. II R. 55. The PSR stated that a five-level upward departure might be warranted for count one because the guideline range did not account for the fact that there were multiple victims. <u>Id.</u> at 59–60. The departure would yield a total guideline range of 177 to 191 months' imprisonment. <u>See id.</u> at 60.

In its sentencing memo, the government requested a ten-level upward departure for count one consisting of five levels for the presence of several law

___
[2] Zarion initially entered a Rule 11(c)(1)(C) plea agreement, but the government withdrew that agreement upon learning that Zarion was going to testify at G'Ante's trial that G'Ante was not involved in the shooting. II R. 36–37.

enforcement victims and five levels for the serious injury suffered by civilian-victim, J.B.  I R. 624–25.  The government recommended 217 months' imprisonment, followed by 5 years' supervised release.  Id. at 625.  In his sentencing memo, Zarion recommended 153 months' imprisonment.  Id. at 612, 618.  Before sentencing, the district court filed a notice of possible departure and/or variance, stating that it was considering an upward departure on the bases outlined by the government, and/or a variance under the 18 U.S.C. § 3553(a) factors.  Id. at 627.

At sentencing, the district court both departed and varied upward.  The court stated that it was not "making a distinction between departure and variance."  III R. 52.  In other words, it was "not adding some for departure and adding some for variance because they're really related to the same facts that justify an upward departure and variance."  Id.

Briefly, departures are "non-Guideline[] sentences imposed under the framework set out in the Guidelines."  United States v. Vazquez-Garcia, 130 F.4th 891, 899 (10th Cir. 2025) (quotations omitted).  Variances are "non-Guideline[] sentence[s] arising from a district court's case-specific analysis of the sentencing factors in § 3553(a)."  Id.  For departures, courts consider "whether a particular offense falls within the heartland of offenses involving similar defendants convicted of the same conduct[.]"  Id. (quotations omitted).  For variances, "a district court has independent discretion to vary based on the § 3553(a) factors even when an offense falls in the heartland of similar offenses."  Id. (quotations omitted).

4

Regarding an upward departure, the court explained that "this situation falls outside of the heartland of cases" for which the U.S.S.G. § 2A2.2 "Aggravated Assault" guideline was written.  III R. 52.  According to the court, that guideline was written for "assault of a federal law enforcement officer, and the heartland of those cases are typically ones where an officer was assaulted during an arrest or some other type of encounter and perhaps injured[.]"  Id.  This case fell outside of that heartland for three reasons.  First, the defendants "fired upon multiple law enforcement officers," and "an entire neighborhood" as "shots were being fired indiscriminately and flying all over the place[.]"  Id. at 53.  Second, a civilian-victim, J.B., sustained serious bodily injury which was not accounted for in the guideline given that J.B. "wasn't a victim of this crime; he wasn't a law enforcement officer."  Id.  Third, the court noted "psychological injury to law enforcement officers and to the other people in that neighborhood whose houses were shot up[.]"  Id. at 54.

Next, the court considered an upward variance under the § 3553(a) factors.  Regarding the nature and circumstances of the offense, the court noted the violent nature of the conduct, labeling it "essentially warfare" which "terroriz[ed] the neighborhood" and was triggered by Zarion's anger at Mr. Shields.  Id.  The court also noted the need to promote respect for the law, finding that "only a long sentence" would be satisfactory because Zarion's retaliatory actions "didn't consider that the activity at the house could have been related to law enforcement" given that officers previously told Zarion's father that they were going to investigate Mr. Shields.  Id. at 54–55.  The court assessed Zarion's history and characteristics

5

which included gang affiliation, use of firearms despite prior felonies, and his lack of consideration that the retaliatory shooting would impact innocent people in the neighborhood. Id. at 55–56. As for deterrence, the court emphasized that, even though gun violence had negatively impacted Zarion and his family, he still chose to participate in a drive by shooting "that could have just as much killed other innocent people[.]" Id. at 56. The court also noted the need to protect the public and that incapacitation and incarceration are crucial where, as here, "shootings happen because of beefs over girlfriends, when people are heavily []armed and there's a proliferation of firearms around them, when there's been an ongoing dispute back and forth of terror exacting terror, retaliation without regard for the safety of anyone[.]" Id. at 57.

Zarion was sentenced to 190 months' imprisonment (70 months for count one and 120 months for count two to run consecutively), followed by five years' supervised release. I R. 631–32. Zarion appealed. Id. at 638.

## Discussion

On appeal, Zarion argues that the district court erred in imposing an upward departure because this case was not outside the heartland of U.S.S.G. § 2A2.2. Aplt. Br. at 10. He also argues that the district court erred in citing psychological injury as a potential basis for an upward departure. Id. Finally, he argues that an upward variance was unreasonable in light of the § 3553(a) sentencing factors. Id. at 10–11. We are not persuaded by Zarion's arguments, and therefore affirm.

6

We begin by noting that "[d]epartures and variances are analytically distinct, and courts must be careful not to confuse them." Vazquez-Garcia, 130 F.4th at 899 (quotations omitted). Still, district courts may "issue both a variance and a departure," and need not "choose one over the other[.]" United States v. Fykes, 678 F. App'x 677, 688 (10th Cir. 2017); United States v. Martinez-Barragan, 545 F.3d 894, 901 (10th Cir. 2008) ("[A] sentencing judge does not commit reversible error by consolidating the two discussions."). Here, the district court did not abuse its discretion by varying upward. Thus, we need not consider whether an upward departure was separately warranted. Even if certain statements regarding the departure were erroneous, the error would be harmless because there is "no reason to think that the district court would impose a different sentence on remand if we were to reverse the departure while affirming the variance[.]" United States v. DeRusse, 859 F.3d 1232, 1238 (10th Cir. 2017) (quotations omitted). Indeed, the district court here explicitly stated that it was both varying and departing upward based on the same underlying concerns. III R. 52.

This court reviews sentences for reasonableness, which has both procedural and substantive components. Martinez-Barragan, 545 F.3d at 898. "Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Sample, 901 F.3d 1196, 1199 (10th Cir. 2018) (quotations omitted). Zarion's challenge is a substantive reasonableness challenge because he argues that the upward variance was "unreasonable given all of

the circumstances of the case in light of the factors listed in 18 U.S.C. § 3553(a)." Aplt. Br. at 10–11.

Our review is for abuse of discretion. Martinez-Barragan, 545 F.3d at 905. An abuse of discretion occurs if a sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Gross, 44 F.4th 1298, 1302 (10th Cir. 2022) (quotations omitted). To be unreasonable, the sentence must "exceed[] the bounds of permissible choice." Id. (quotations omitted). In reviewing a sentence for reasonableness, "we give due deference to the sentencing court's variance based on 18 U.S.C. § 3553(a)'s factors." Id. at 1301 (quotations omitted). Indeed, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." Gall v. United States, 552 U.S. 38, 51 (2007) (quotations omitted). We have declined to find an abuse of discretion where, as here, the district court "carefully consider[s]" the § 3553(a) factors and conducts "a detailed, individualized assessment" of how those factors apply in a specific case. United States v. McCulley, 679 F. App'x 643, 645 (10th Cir. 2017). "We will not reweigh the factors on appeal[.]" Id. Comparatively, we have found abuse of discretion where the district court relies "solely on one § 3553(a) factor" in varying upward and does not "address[] other relevant factors." United States v. Crosby, 119 F.4th 1239, 1247 (10th Cir. 2024).

Zarion's sentence exceeds the guideline range by 29 months. Aplt. Br. at 21. As mentioned, in varying upward, the district court extensively assessed the § 3553(a) factors as they apply to this case. III R. 53–57. In doing so, the court

8

carefully made individualized assessments of the relevant sentencing factors and concluded that they supported an upward variance. Id. We do not second-guess the district court's assessment of those factors. Rather, we defer to the district court's judgment that the factors call for the variance. Gross, 44 F.4th at 1301. We therefore are not persuaded Zarion's sentence "exceed[s] the bounds of permissible choice" in this case. Id. at 1302 (quotations omitted).

Zarion's arguments to the contrary are unpersuasive. He argues that the variance was not warranted because several facts relied upon by the district court were already accounted for in the guideline range. Aplt. Br. at 21. Unfortunately for Zarion, it is well-established that "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." United States v. Barnes, 890 F.3d 910, 921 (10th Cir. 2018) (quotations omitted).

Second, Zarion argues that the district court erred in assessing the factors related to promoting respect for the law, deterrence, and protection of the public. Aplt. Br. at 21, 22. The district court stated that "only a long sentence" would promote respect for the law. III R. 54–55. Similarly, the court was "not convinced that a short sentence" would suffice for purposes of deterrence and protecting the public. Id. at 56. Zarion asserts that these assessments cannot support an upward variance because a top-of-guideline sentence of 161 months is a "long sentence" and thus was improperly characterized as "short." Aplt. Br. at 21–22. But the district court never said that a 161-month sentence is short. See III R. 54–56. Further, as

9

explained, the district court balanced the § 3553(a) factors as they pertain to Zarion's case. See id. When such a careful balance is struck, we defer to the district court. United States v. Sells, 541 F.3d 1227, 1239 (10th Cir. 2008).

We need not assess whether a departure was also warranted because we have no reason to think that Zarion's sentence would be any different if we reversed the departure while affirming the variance. DeRusse, 859 F.3d at 1238. In any event, for the reasons explained in this panel's opinion in a companion appeal, United States v. Barnes, No. 24-3062, we are convinced that the district court was correct in ultimately concluding that this case falls outside of § 2A2.2's heartland even though it incorrectly suggested that § 2A2.2 only applies to assault on federal officers rather than all aggravated assaults.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge